IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REV. CLARENCE DOUGLAS ADAMS, JR., #715344 | § § § | |
| V. | § § | A-14-CA-821-SS |
| JAILER MARTIN, SGT. KUEHN, and CPL POSEY | § § § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); Defendants' Motion for Summary Judgment (Document No. 25); Plaintiff's Dismissal by Stipulation (Document No. 28); Plaintiff's Response to Defendants' Motion for Summary Judgment and Cross Motion for Summary Judgment (Document No. 30); and Defendant Martin's Reply Brief in Support of Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (Document No. 31). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

I. BACKGROUND

At the time he filed his complaint, Plaintiff was an inmate incarcerated in the Beto Unit of the Texas Department of Criminal Justice - Correctional Institutions Division. Plaintiff was

previously confined in the Burleson County Jail.  Plaintiff files this action pursuant to 42 U.S.C. § 1983 alleging officials at the Burleson County Jail violated his constitutional rights.  Plaintiff sues Jailer Martin, Sergeant Kuehn, and Corporal Posey.  He seeks $50,000 in compensatory damages, $30,000 in punitive damages, and $10,000 in nominal damages from each defendant.  Plaintiff subsequently filed a Dismissal by Stipulation.  In his stipulation Plaintiff agrees to voluntarily dismiss with prejudice his claims asserted against Defendants Kuehn and Posey.

With regard to Defendant Martin Plaintiff alleges Martin interfered with his legal mail.  In addition, he alleges Martin stole a pair of Plaintiff's underwear.  He clarifies Martin took the underwear because they were contraband and told Plaintiff they would be stored with Plaintiff's other property.  According to Plaintiff, the underwear was not stored with his other property.

Plaintiff admits he wrote grievances on a regular basis while confined in the Burleson County Jail.  According to Plaintiff, Martin told other detainees Plaintiff was "saying things" on the other inmates.  Plaintiff believes the jailers were trying to get the other inmates to "jump" him.  Plaintiff alleges he requested to be placed in "lock-up" because Martin and other jailers put his life in danger.  According to Plaintiff, his request was ignored.  Plaintiff accuses Martin of trying to "wire things up" and retaliating against him for filing grievances.

Plaintiff further alleges, while he was in "lockup" on October 4, 2012, he was taking a shower and the fire alarm went off.  Plaintiff admits he had placed his washcloth over half of the vent, and Martin told him that is why the alarm went off.  According to Plaintiff, he took the cloth down and Martin grabbed it from his hand and told him that would be 30 more days in lockup.  Plaintiff asserts he was at the door when Martin slammed it in Plaintiff's face.  Plaintiff admits he slapped the door and asked Martin for a grievance.  Plaintiff alleges Martin came back into the cell,

told Plaintiff to put his hands on the wall, grabbed Plaintiff's right arm, twisted Plaintiff's arm up behind Plaintiff's back, and pushed him into the wall. Plaintiff further alleges Martin placed handcuffs on him very tightly and escorted him out of the cell. Plaintiff was told to sit in a restraint chair and he was restrained. According to Plaintiff, he remained in the chair for two hours.

## II.  THE PARTIES ASSERTIONS

Defendants move for summary judgment. Because Plaintiff has stipulated to the dismissal of his claims brought against Defendants Kuehn and Posey, the Court only discusses the Motion for Summary Judgment as it pertains to Defendant Martin.

Defendants' counsel deposed Plaintiff. During his deposition, Plaintiff clarified his claims brought against Defendant Martin. Plaintiff complains Defendant Martin: (1) opened a piece of Plaintiff's legal mail; (2) looked at Plaintiff's legal mail that was in his bunk; (3) took away Plaintiff's writing implements; (4) took a pair of Plaintiff's underwear; and (5) used force against Plaintiff during a confrontation.

Defendant Martin asserts he is entitled to qualified immunity. He argues none of Plaintiff's claims rise to the level of a constitutional violation. With regard to the legal mail claim, Defendants point out Plaintiff admitted Martin came to him after the piece of legal mail was opened, advised Plaintiff he had done so, and that it was a mistake. In addition, Defendants point out Plaintiff suffered no adverse action with respect to his legal defense as a result of the accidental opening of a piece of his legal mail.

With respect to Plaintiff's claim that Martin looked at some of his legal documents during a unit shakedown, Defendants assert a superficial review of a bunk's contents is necessary in search for contraband. In addition, Defendants assert the grievance Plaintiff filed with regard to this claim

3

related to another inmate's legal documents in another cell. Defendants argue Plaintiff has no constitutional claim for allegedly observing jail staff reviewing someone else's legal documents. In addition, Defendants argue Plaintiff suffered no adverse consequence.

To the extent Plaintiff complains his writing implements were taken during a shakedown, Defendants point out Plaintiff admits he was never without writing implements for more than a day or two and there were no grievances or other filings Plaintiff was prevented from preparing as a result of this alleged delay.

To the extent Plaintiff complains about the missing underwear, Defendants assert there is no evidence of intentional conduct or improper intent. They conclude Plaintiff's claim does not rise to the level of a constitutional violation.

With regard to Plaintiff's claim of excessive force, Defendants explain Plaintiff hung his washcloth from a ceiling vent and the fire alarm in his unit went off. Martin responded to the call. According to Defendants, Plaintiff admitted he was aware he was not supposed to cover or hang anything from the vents, as this had been an ongoing issue at the jail. As Martin was leaving and closing the door, Plaintiff smacked the door and argued with Martin about taking away his washcloth. Martin handcuffed Plaintiff, walked him down the hall, and placed him in a restraint chair. Although Plaintiff complains the handcuffs were too tight, Plaintiff admitted during his deposition that he did not complain of this until he was being removed from the chair. Defendants argue Plaintiff does not allege he suffered any form of injury due to his placement in the restraint chair and there is no evidence Martin acted with malicious or sadistic purpose. To the extent Plaintiff claims the handcuffing exacerbated a pre-existing shoulder condition, Defendants argue force is not rendered excessive solely because it might have exacerbated a preexisting condition.

Defendants conclude the limited use of force against Plaintiff was justified and the amount of force used was proportionate to the need to restrain him.

In his response and cross motion for summary judgment, Plaintiff does not object to the construction of his claims. Instead, he reasserts Martin used excessive force against him when he slammed Plaintiff against the wall, swiftly handcuffed Plaintiff behind his back extremely tightly, and escorted him to the restraint chair where he remained for two hours. Plaintiff asserts the force of the slam of Plaintiff's shoulder into the wall made him dizzy and caused him pain. In addition, he repeats the handcuffs were too tight.

Plaintiff now asserts Martin opened his legal mail on three occasions and read it in violation of his First and Sixth Amendment rights. He further alleges a violation of the Fourth Amendment because his personal papers and effects were not secure.

Plaintiff also alleges Martin violated Plaintiff's Fourteenth Amendment rights when he failed to protect Plaintiff from other inmates. Plaintiff alleges he submitted grievances asking for help and explaining his life was in danger. Plaintiff submits a sworn affidavit to support his claims.

Defendants object to Plaintiff's affidavit to the extent he asserts facts that are expressly contradicted by his deposition testimony, and continue to assert Martin is entitled to qualified immunity.

## V. ANALYSIS

### A. Summary Judgment Standard

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v.

Rally's Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992).  When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial.  Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995);  FED. R. CIV. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense.  Id. at 322.  In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses.  Id. at 323-24.  At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial."  Id. at 324, 106 S. Ct. at 2553.  The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations.  Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party.  The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court."  James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586)).  To the extent facts are undisputed, a Court may resolve the case as a matter of law.  Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

B.     Qualified Immunity

Martin asserts his entitlement to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al–Kidd, ─── U.S. ───, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). In order to overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right, and then must show that "the right was clearly established ... in light of the specific context of the case." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. 223. Courts may address these two elements in either order, and need not proceed to the second where the first is resolved in the negative. See Lytle v. Bexar Cnty., Tex., 560 F.3d 404, 409–10 (5th Cir. 2009) (citing Pearson, 555 U.S. at 231).

C.     Excessive Force

Plaintiff alleges excessive force was used against him on one occasion at the Burleson County Jail. Defendants maintain the limited use of force against Plaintiff was justified and the amount of force used was proportionate to the need to restrain him

A pretrial detainee has a right not to be subjected to excessive use of force. See Hudson v. McMillian, 503 U.S. 1, 5–10 (1992); Valencia v. Wiggins, 981 F.2d 1440, 1446 (5th Cir. 1993). The question is whether the force is applied in a good faith effort to restore discipline or maliciously and sadistically for the very purpose of causing harm. Valencia, 981 F.2d at 1443–45. There are five

factors to consider in answering this question, including the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 1446 n. 29.

The summary judgment evidence shows Plaintiff smacked the door after Martin took Plaintiff's washcloth. Plaintiff admits he banged on the door when Martin did not respond to his demands. Defendants show Plaintiff's acts violated jail rules and regulations. The only force alleged by Plaintiff is that he was pushed in order to be handcuffed and the handcuffs were too tight. The undisputed evidence is that Martin was acting in a good faith effort to restore the discipline being breached by Plaintiff's conduct. There is no evidence Martin acted maliciously or sadistically for the very purpose of causing harm. For these reasons Martin is protected by qualified immunity.

### D. Legal Mail, Papers and Writing Utensils

Plaintiff alleges his legal mail was opened and read outside of his presence and without his consent, his legal papers on his bunk were read without his consent, and he was without writing implements for a day or two. Defendants point out Plaintiff suffered no adverse consequence with respect to his legal defense as a result of the alleged acts and there were no grievances or other filings he was prevented from preparing. In his Cross Motion for Summary Judgment Plaintiff adds his Fourth and Sixth Amendment rights were also violated as a result of Martin's actions.

In order for Plaintiff's claim to rise to the level of a constitutional violation of his right to access to the courts under the First Amendment, he must allege that his position as a litigant was prejudiced. Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993). Because Plaintiff has only asserted that his mail was opened outside of his presence and without his consent, his legal

papers were read, and he was without writing implements for only a couple of days, he has failed to state a cognizable constitutional claim for denial of his right to access to the courts. See id. (holding inmate failed to state a cognizable constitutional claim for denial of his right to access to the courts because inmate only asserted his legal mail was opened and read outside of his presence and without his consent); Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993), cert. denied, 510 U.S. 1123 (1994) (holding inmates failed to state a cognizable constitutional claim either for a denial of access to the courts or for a denial of their right to free speech by alleging their incoming legal mail was opened and inspected for contraband outside their presence).

      Plaintiff has also failed to state a cognizable free speech claim. In light of the fact that a jail has a legitimate security interest in opening and inspecting incoming mail for contraband, see Thornburgh v. Abbott, 490 U.S. 401, 413–414 (1989); see also Turner v. Safley, 482 U.S. 78, 91–92 (1987), Plaintiff's allegations that his legal mail was opened and read but not censored and his legal papers were read does not rise to the level of a constitutional violation. See Brewer, 3 F.3d at 825.

      Furthermore, Plaintiff has failed to establish a violation of his Fourth Amendment rights. A prisoner has no legitimate expectation of privacy in his prison cell; therefore, the Fourth Amendment's prohibition on unreasonable searches does not restrict searches and seizures in the cell. See Hudson v. Palmer, 468 U.S. 517, 525–26 (1984).

      Plaintiff has also failed to establish a violation of his Sixth Amendment rights. The mail Plaintiff accused Martin of accidentally opening was mail Plaintiff sent to a Texas Representative, not his attorney. Plaintiff does not specifically identify any other legal mail or documents allegedly read by Martin. Plaintiff's conclusory claim raised in his Cross Motion for Summary Judgment is insufficient to establish a violation of his Sixth Amendment rights.

E.     Failure to Protect

Plaintiff alleges he had difficulty with other inmates and Defendant Martin tried to "wire things up." Plaintiff claims Martin refused to protect him from the other inmates, putting his life in danger. As a pretrial detainee, Plaintiff's constitutional rights flow from the procedural and substantive due process guarantees of the Fourteenth Amendment, whereas the constitutional rights of convicted inmates flow from the Eighth Amendment's prohibition on cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir.1996) (en banc). The standard of analyzing failure to protect claims is the same. In this case Plaintiff cannot prevail on his failure-to-protect claim, because he does not allege that he suffered an actual physical injury resulting from prison officials' purported failure to protect. Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999). Plaintiff merely alleges he was having problems with other inmates. He does not allege he was ever attacked by another inmate, only that he feared being attacked.

F.     Loss of Property

Plaintiff claims Martin took a pair of his underwear, claiming it was contraband and it would be placed with Plaintiff's stored property. Despite the promise, the underwear was not stored. Without citing any legal authority, Defendants argue this claim does not rise to the level of a constitutional or state law violation, because there is no evidence of intentional conduct or improper intent and Plaintiff could not have possessed the underwear in TDCJ where he has been incarcerated over the last two years.

Plaintiff's claims are barred by the Parratt–Hudson doctrine. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels

v. Williams, 474 U.S. 327 (1986).  Under this doctrine, deprivations of property caused by the random and unauthorized misconduct of state actors, such as the case in the instant matter, do not infringe constitutional due process provided that adequate state post-deprivation remedies exist. Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995).

Although Plaintiff's underwear may have been seized pursuant to jail policy, Plaintiff does not allege the policy allowed his underwear to be lost or destroyed pursuant to that policy. As such, Defendant Martin's actions would not have been in accord with jail policy and therefore were random and unauthorized.  Accordingly, Defendant Martin's actions did not violate procedural due process, because Texas provides adequate post-deprivation remedies.  Stated differently, even an intentional deprivation which was made without regard to the proper procedural regulations would not violate procedural due process if the state furnished an adequate post-deprivation remedy. Murphy v. Collins, 26 F.3d 541, 543 (5th Cir. 1994).  In Texas, the tort of conversion fulfills this requirement.  Id.

G.     Retaliation

Plaintiff may also be alleging his First Amendment rights have been violated because he was a frequent filer of grievances.

In order to state a valid claim for retaliation under § 1983, a prisoner must allege the following: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for the exercise of that right; (3) a retaliatory adverse act; and (4) causation.  Jones v. Greninger, 188 F.3d 322, 324-325 (5th Cir. 1999). The plaintiff must establish that "but for the retaliatory motive the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  Mere conclusory statements that retaliation occurred are not sufficient;

"The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Id. (quoting Jackson, 864 F.2d at 1143 n.6). Finally, the retaliatory adverse act must be more than inconsequential or de minimis, that is, it must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights. Morris v. Powell, 449 F.3d 682 (5th Cir. 2006).

In this case, it cannot be said that the alleged harassment of Plaintiff was so chilling or disturbing that it would silence a person of ordinary firmness from future First Amendment activities. Id. at 685-86. There is no evidence that Plaintiff was silenced in any manner. The retaliatory acts of which he complains were clearly de minimis acts. Moreover, Plaintiff's allegations of retaliation are conclusory and fail to establish a constitutional violation.

## VI.  RECOMMENDATION

The undersigned recommends that the District Court **GRANT** Plaintiff's Dismissal by Stipulation [#28] and **DISMISS WITH PREJUDICE** Plaintiff's claims brought against Defendants Kuehn and Posey. The undersigned further recommends that the District Court **DENY** Plaintiff's Cross Motion for Summary Judgment [#30], **GRANT** Defendants' Motion for Summary Judgment [#25] with respect to Defendant Martin, and render a take nothing judgment.

## VII. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. en banc, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 14th day of May, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE