IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2015 JUL 31 PM 4: 08
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

REV. CLARENCE DOUGLAS ADAMS JR.
#715344,

                    Plaintiff,

-vs-                                                          Case No.  A-14-CA-821-SS

JAILER MARTIN, SGT. KUEHN, and CPL
POSEY,

                    Defendants.

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Justin Martin, Peter Kuehn, and Courtney Posey's Motion for Summary Judgment [#25], Plaintiff Rev. Clarence Douglas Adams Jr.'s Dismissal by Stipulation [#28], Plaintiff Adams's Response and Cross Motion for Summary Judgment [#30], Defendant Martin's Reply Brief in Support of Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment [#31], the Report and Recommendation of the United States Magistrate Judge [#32], and Plaintiff Adams's Objections [#35]. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

All matters in this case were referred to United States Magistrate Judge Andrew W. Austin for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Adams is entitled to de novo review of the portions of the Magistrate Judge's report to which he filed specific objections. 28

U.S.C. § 636(b)(1).  All other review is for plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79

F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).  Nevertheless, this Court has reviewed the entire file

de novo, and agrees with the Magistrate Judge's recommendation.

## Background

### I.    Adams's Allegations

At the time he filed his complaint, Plaintiff Adams was an inmate incarcerated in the Beto

Unit of the Texas Department of Criminal Justice, Correctional Institutions Division.  Adams was

previously confined in the Burleson County Jail.  Adams files this action pursuant to 42 U.S.C.

§ 1983, alleging officials at the Burleson County Jail violated his constitutional rights.  He sues Jailer

Martin, Sergeant Kuehn, and Corporal Posey and seeks $50,000 in compensatory damages, $30,000

in punitive damages, and $10,000 in nominal damages from each defendant.  On March 11, 2015,

Adams filed a Stipulation of Dismissal [#28], agreeing to dismiss with prejudice his claims against

Kuehn and Posey.

Adams has asserted a variety of different allegations, and the Court focuses on those against

Martin.  First, Adams alleges Martin interfered with his legal mail.  Second, Adams claims Martin

confiscated a pair of Adams's underwear, told Adams they were contraband, informed Adams they

would be stored with Adams's other property, but, according to Adams, the underwear was not

stored with his other property.

Third, Adams alleges Martin retaliated against Adams for regularly writing grievances while

confined in the Burleson County Jail.  Specifically, Adams claims Martin told other detainees Adams

was "saying things" on the other inmates.  Adams believes Martin and the other jailers were trying

to get Adams's fellow inmates to "jump him," and Adams claims he requested to be placed in "lock-up" because his life was in danger. According to Adams, his requests were ignored.

Fourth, Adams alleges that while he was in "lockup" on October 4, 2012, Martin used excessive force against Adams after an incident in the shower. Adams claims he was taking a shower when the fire alarm went off because he had placed his washcloth over half of the air vent. Adams took the washcloth down, and Martin grabbed it from his hand. Martin further told Adams he would receive thirty more days in lockup for his behavior. As Martin left the room, Adams claims Martin slammed the door in Adams's face. In response, Adams admits he slapped the door and asked Martin for a grievance. According to Adams, Martin then reentered the cell, told Adams to put his hands on the wall, grabbed Adams's right arm, twisted the arm behind Adams's back, and pushed Adams into the wall. Adams further claims Martin placed handcuffs on him very tightly and escorted him out of his cell where Martin placed Adams into a restraint chair. According to Adams, he remained in the chair restrained for two hours.

During his deposition, Adams clarified his claims brought against Martin. Adams complains Martin: (1) opened a piece of Adams's legal mail; (2) looked at Adams's legal mail that was in his bunk; (3) took away Adams's writing implements; (4) took a pair of Adams's underwear; and (5) used force against Adams during a confrontation.

## II.    The Parties' Motions for Summary Judgment

Defendant Martin has moved for summary judgment, arguing that he is entitled to qualified immunity and that none of Adams's claims rise to the level of a constitutional violation. Concerning the legal mail claim, Adams admitted Martin came to him after he opened the piece of legal mail,

advised Adams he had done so, and acknowledged it was a mistake. Martin also points out Adams suffered no adverse action with respect to his legal defense as a result of the opening of the mail.

With respect to the claim Martin looked at some of Adams's legal documents during a unit shakedown, Martin contends a superficial review of a bunk's contents is necessary in search of contraband. To the extent Adams asserts a claim based on the inspection of another inmate's documents in another cell, Martin argues Adams has no constitutional claim for allegedly observing jail staff review someone else's legal documents. Furthermore, Martin again highlights the fact Adams suffered no adverse consequences as the result of any alleged review of his legal documents.

With regard to Adams's claim concerning deprivation of writing implements, Martin highlights Adams's admission that he was never without writing implements for more than a day or two, and there were no grievances or other filings Adams was prevented from preparing as the result of any alleged delay.

Concerning the allegedly missing underwear, Martin argues there is no evidence of intentional conduct or improper intent and that Adams's claim does not rise to the level of a constitutional violation.

Finally, with respect to the excessive force claim, Martin points out that Adams knew not to cover or hang anything from the vents as to avoid setting off the fire alarm because this had been an ongoing issue at the jail. As Martin was leaving and closing the door, Adams smacked the door and argued with Martin about taking away the washcloth. In response, Martin handcuffed Adams, walked him down the hall, and placed him in a restraint chair. Martin contends that while Adams complains the handcuffs were too tight, Adams admitted during his deposition he did not complain about this until he was being removed from the chair. Martin points to a lack of evidence concerning

-4-

any injury to Adams due to his time in the restraint chair, and he argues there is no evidence of malicious or sadistic purpose. To the extent Adams claims the handcuffing exacerbated a preexisting shoulder condition, Martin argues force is not rendered excessive solely because it might have exacerbated a preexisting condition. Martin concludes the limited use of force against Adams was justified and that the amount of force used was proportionate to the need to restrain him.

In his response and cross motion for summary judgment, Adams does not object to the way Defendants constructed his claims. Instead, he reasserts Martin used excessive force against him when he slammed him against the wall, handcuffed his hands behind his back extremely tightly, and escorted him to the restraint chair where he remained for two hours. Adams claims the force of the slam of his shoulder into the wall made him dizzy and caused him pain. He repeats that the handcuffs were too tight.

Adams asserts Martin opened his legal mail on three occasions and read it in violation of his First and Sixth Amendment rights. He further alleges a violation of his Fourth Amendment rights because his personal papers and effects were not secure.

In addition, Adams alleges Martin violated his Fourteenth Amendment rights when he failed to protect Adams from other inmates. Adams alleges he submitted grievances asking for help and explaining his life was in danger. In support of his claims, Adams submitted a sworn affidavit.

Martin objects to Adams's affidavit to the extent he asserts facts that are expressly contradicted by his deposition testimony, and he continues to assert he is entitled to qualified immunity.

Adams filed objections to the Report and Recommendation but limited his objections to two claims: (1) his excessive force claim; and (2) his failure-to-protect claim. *See* Objections [#35] at 1.

## Analysis

### I.      Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343

(5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Application

### A.   Qualified Immunity

Martin asserts qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In order to overcome a qualified immunity defense, a plaintiff must allege a violation of

a constitutional right, and then must show that "the right was clearly established . . . in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. 223. Courts may address these two elements in either order, and need not proceed to the second where the first is resolved in the negative. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 409–10 (5th Cir. 2009) (citing *Pearson*, 555 U.S. at 231).

**B.      Excessive Force**

A pretrial detainee has a right not to be subjected to excessive use of force. *See Valencia v. Wiggins*, 981 F.2d 1440, 1445–46 (5th Cir. 1993). The question is whether the force is applied in a good faith effort to restore discipline or maliciously and sadistically for the very purpose of causing harm. *Id.* at 1446. There are five factors to consider in answering this question, including the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 1446 n.29 (citing *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)).

The summary judgment evidence shows Adams smacked the door after Martin took Adams's washcloth. Adams admits he banged on the door when Martin did not respond to his demands. Martin shows Adams's acts violated jail rules and regulations. The only force alleged by Adams is that he was pushed in order to be handcuffed and the handcuffs were too tight. The undisputed evidence is that Martin was acting in a good faith effort to restore the discipline being breached by Adams's conduct. There is no evidence Martin acted maliciously or sadistically for the very purpose of causing harm. For these reasons Martin is protected by qualified immunity.

In his objections, Adams contends there are disputed facts.  First, Adams argues he "was obviously just attempting to get defendant's attention before he moved away from the door and in a consistent manner both verbally and physically (which is not prohibited by jailhouse rules), while the defendant is maintaining the opposite."  Objections [#35] at 3 (citing in a footnote the Jailhouse Rules and the absence of any rule prohibiting knocking or slapping the cell door to summon a jailer).  While attempting to get a jailer's attention by knocking on the door may not be against the rules, Adams was not handcuffed and put in the restraint chair for that offense.  Rather, covering or hanging anything from the air vents is a violation of Jailhouse Rules.  *See* Objections [#35-1] Ex. C (Jailhouse Rules).  Section 19 of the Jailhouse Rules prohibits both "[c]onduct which disrupts or interferes with the orderly function or security of the institution" and more specifically "tampering or blocking air vents."  *Id.*, Section 19.  As such, when Adams covered the air vent with his wash cloth, he violated Jailhouse Rules.  In fact, Adams admitted at his deposition that he was aware he was not supposed to be covering the air vents as this had been an ongoing problem and that there were penalties for covering the vents.  *See* Defs.' Mot. Summ. J. [#25-2] Ex. 2 (Adams Dep.) at 98:23–101:5.  Adams also admits that after the washcloth was confiscated, he smacked the door as Martin left the room and demanded a grievance, arguing with Martin about taking away the washcloth.  *Id.* at 107:6–19.  In so doing, Adams was interfering with the orderly function of the institution in violation of Jailhouse Rules.  As such, there is no dispute Adams violated Jailhouse Rules and was handcuffed and placed in the restraint chair based on those violations.

Adams also argues in his objections that Martin did not actually handcuff him for smacking the door but instead did so "out of malicious frustration for plaintiff wanting a grievance and the fire alarm going off."  Objections [#35] at 3.  These are no more than conclusory assertions.  The

evidence shows Adams violated Jailhouse Rules, and as a result Martin handcuffed Adams and placed him in the restraint chair. There is no evidence Martin maliciously took these actions.

Finally, Adams argues the force used by Martin was an unreasonable amount. As described by the Magistrate Judge, the evidence is to the contrary. Martin's use of force was limited and proportionate to the need to restrain Adams. While Adams insists Martin should have just asked him to turn around, *see id.*, Martin behaved reasonably under the circumstances.

## C.   Legal Mail, Papers, and Writing Utensils

"A prison official's interference with a prisoner's legal mail may violate the prisoner's constitutional right of access to the courts[;] such interference may [also] violate the prisoner's First Amendment right to free speech—i.e., the right to be free from unjustified governmental interference with communication." *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). In order for Adams's claims regarding the opening of his legal mail, the inspection of his legal documents, and the deprivation of writing implements to rise to the level of a constitutional violation of his right to access to the courts, he must allege that his position as a litigant was prejudiced. *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993). Because Adams has only asserted that his mail was opened outside of his presence and without his consent, his legal papers were read, and he was without writing implements for only a couple of days, he has failed to state a cognizable constitutional claim for denial of his right to access to the courts. *See id.* (holding inmate failed to state a cognizable constitutional claim for denial of his right to access to the courts because inmate only asserted his legal mail was opened and read outside of his presence and without his consent); *Brewer*, 3 F.3d 816, 826 (5th Cir. 1993) (holding inmates failed to state a cognizable constitutional

-10-

claim for a denial of access to the courts by alleging their incoming legal mail was opened and inspected for contraband outside their presence).

Adams has also failed to state a cognizable free speech claim.  In light of the fact that a jail has a legitimate security interest in opening and inspecting incoming mail for contraband, *see Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989); *Turner v. Safley*, 482 U.S. 78, 91–92 (1987), Adams's allegations that his legal mail was opened and read but not censored and his legal papers were read does not rise to the level of a constitutional violation.  *See Brewer*, 3 F.3d at 825.

Furthermore, Adams has failed to establish a violation of his Fourth Amendment rights.  A prisoner has no legitimate expectation of privacy in his prison cell; therefore, the Fourth Amendment's prohibition on unreasonable searches does not restrict searches and seizures in the cell.  *See Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984).

Adams has also failed to establish a violation of his Sixth Amendment rights.  The mail Adams accused Martin of accidentally opening was mail Adams sent to a Texas Representative, not his attorney.  Adams does not specifically identify any other legal mail or documents allegedly read by Martin.  Adams's conclusory claim raised in his Cross Motion for Summary Judgment is insufficient to establish a violation of his Sixth Amendment rights.

## D.    Failure to Protect

Adams alleges Martin refused to protect him from the other inmates, putting his life in danger.  As a pretrial detainee, Adams's constitutional rights flow from the procedural and substantive due process guarantees of the Fourteenth Amendment, whereas the constitutional rights of convicted inmates flow from the Eighth Amendment's prohibition on cruel and unusual punishment.  *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) (en banc).  The standard of

analyzing failure to protect claims is the same. In this case Adams cannot prevail on his failure-to-protect claim because he does not allege he suffered an actual physical injury resulting from prison officials' purported failure to protect. *See Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). Adams merely alleges he was having problems with other inmates. He does not allege he was ever attacked by another inmate, only that he feared being attacked. In his objections, Adams simply reiterates the same allegations and concedes the only injury he allegedly suffered was psychological in nature. *See* Objections [#35] at 4–5. As such, Adams does not a state a viable failure-to-protect claim.

E.     **Loss of Property**

Without citing any legal authority, Martin argues Adams's claim concerning his confiscated and unreturned underwear does not rise to the level of a constitutional or state law violation because there is no evidence of intentional conduct or improper intent and Adams could not have possessed the underwear in TDCJ where he has been incarcerated over the last two years.

The Court finds Adams's claims are barred by the *Parratt–Hudson* doctrine. *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Under this doctrine, deprivations of property caused by the random and unauthorized misconduct of state actors, such as is the case in the instant matter, do not infringe constitutional due process provided that adequate state post-deprivation remedies exist. *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995).

Although Adams's underwear may have been seized pursuant to jail policy, Adams does not allege the policy allowed his underwear to be lost or destroyed pursuant to that policy. As such, Martin's actions would not have been in accord with jail policy and therefore were random and

-12-

unauthorized.  Accordingly, Martin's actions did not violate procedural due process because Texas provides adequate post-deprivation remedies.  Stated differently, even an intentional deprivation which was made without regard to the proper procedural regulations would not violate procedural due process if the state furnished an adequate post-deprivation remedy. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994).  In Texas, the tort of conversion fulfills this requirement. *Id.*

## F.    Retaliation

Adams may also be alleging his First Amendment rights have been violated because he was a frequent filer of grievances.  In order to state a valid claim for retaliation under § 1983, a prisoner must allege the following: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for the exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Jones*, 188 F.3d at 324–25.  The plaintiff must establish that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).  Mere conclusory statements that retaliation occurred are not sufficient; "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6).  Finally, the retaliatory adverse act must be more than inconsequential or de minimis; that is, it must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684–86 (5th Cir. 2006).

In this case, it cannot be said that the alleged harassment of Adams was so chilling or disturbing that it would silence a person of ordinary firmness from future First Amendment activities. *Id.* at 685–86.  There is no evidence Adams was silenced in any manner.  The retaliatory

acts of which he complains were clearly de minimis acts.   Moreover, Adams's allegations of retaliation are conclusory and fail to establish a constitutional violation.

**Conclusion**

Accordingly,

IT IS ORDERED that the Report and Recommendation of Magistrate Judge Andrew W. Austin [#32] is ACCEPTED;

IT IS FURTHER ORDERED that Plaintiff Rev. Clarence Douglas Adams Jr.'s Objections [#35] are OVERRULED;

IT IS FURTHER ORDERED that Plaintiff Adams's claims against Defendants Peter Kuehn and Courtney Posey are DISMISSED WITH PREJUDICE pursuant to Plaintiff Adams's Dismissal by Stipulation [#28];

IT IS FURTHER ORDERED that Defendant Justin Martin's Motion for Summary Judgment [#25] is GRANTED;

IT IS FINALLY ORDERED that Plaintiff Adams's Cross Motion for Summary Judgment [#30] is DENIED.

SIGNED this the _31st_ day of July 2015.


SAM SPARKS
UNITED STATES DISTRICT JUDGE